UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No. 15-10356-DPW

UNITED STATES OF AMERICA

v.

JACK VENTOLA

**MEMORANDUM AND ORDER RE:
THIRD-PARTY RICHARD REEDER'S MOTION TO QUASH
(DOCKET ENTRY # 106); THIRD-PARTY NORTH
TEXAS PACKING, INC.'S MOTION TO QUASH
(DOCKET ENTRY # 109)**

**June 7, 2017**

**BOWLER, U.S.M.J.**

Pending before this court are two, substantially identical motions filed by the subjects of two, pretrial subpoenas duces tecum, Richard Reeder ("Reeder") and North Texas Packing, Inc. ("North Texas"). (Docket Entry ## 106, 109). Reeder and North Texas move to quash the subpoenas as "unreasonable or oppressive" under Fed. R. Crim. P. 17(c) ("Rule 17(c)"). The Deputy Clerk issued the subpoenas based on an ex parte application filed by defendant Jack Ventola ("defendant"). (Docket Entry # 84). The application described the two subpoenas in general terms and articulated the relevance, admissibility, and specificity requirements in <u>United States v. Nixon</u>, 418 U.S. 683, 699 (1974). (Docket Entry # 81).

Defendant opposes the motion (Docket Entry # 116) and supports the opposition with prior ex parte filings (Docket Entry ## 81, 108). After conducting a hearing on June 1, 2017, this court took the motions (Docket Entry ## 106, 109) under advisement.

BACKGROUND

As acknowledged by defendant, the subpoenas seek "notes, contracts, invoices, payments, financial records, emails, letters and text messages" pertaining to Michael Bruno ("Bruno"), National Fish & Seafood Company ("NFS"), and Alpine Investments "for the relevant time period." (Docket Entry # 116, pp. 3, 8). Defendant submits that North Texas and Reeder overstate the lack of specificity because the Second Superceding Indictment places the subpoenas in the context of an illicit kickback scheme over a six year time period. North Texas and Reeder argue that the 2008 to 2014 time period together with the broad, open-ended categories of material render the subpoenas unreasonable and oppressive. They further contend that the subpoenas are premature and defendant fails to satisfy the relevance, admissibility, and specificity requirements.

Defendant maintains that the materials are relevant and admissible in light of the kickback described in the Second Superceding Indictment. According to defendant, North Texas, through Reeder, effectuated the kickback scheme by issuing checks

2

to Alpine Investments, an entity controlled by defendant. (Docket Entry # 116, p. 2). The Second Superceding Indictment states that, between February 2008 and May 2014, defendant instructed an unidentified co-owner of a Texas shrimp re-packaging company to increase the amount the company charged a large seafood processor "and to pay half of that amount as a kickback to" defendant. (Docket Entry # 91, ¶ 40). Under the scheme set out in the Second Superceding Indictment, the company issued checks to Alpine Investments totaling $411,927 and defendant "caused the checks to be deposited into" an Alpine Investments account and the money thereafter transferred into defendant's personal bank accounts. (Docket Entry # 91, ¶¶ 40-44).

Separately, defendant argues that North Texas and Reeder's counsel ("NT counsel") did not comply with LR. 7.1(a)(2). In particular, NT counsel initially "indicated that his clients would comply with the Subpoenas" but stated a few days later that "his clients would comply so long as the scope was narrowed."[1] (Docket Entry ## 116-1, 116-2). On the same day, an associate of defendant's law firm emailed NT counsel asking for additional information about the limitation regarding the subpoenas' scope. In a reply email three days later, NT counsel asked to narrow

---

[1] Placed in the context of ongoing discussions, NT counsel did not waive the ability to challenge the subpoenas.

"the subpoenas temporally and with respect to the types of documents covered." (Docket Entry # 116-2). The following morning, NT counsel emailed the associate and asked her to contact him to follow up on the last discussion. (Docket Entry # 116-2). Without waiting for a reply, North Texas and Reeder filed the motions to quash the same day.

## DISCUSSION

Rule 17(c) allows a defendant to file requests for subpoenas duces tecum directed to a witness that are returnable prior to trial. See United States v. Kravetz, 706 F.3d 47, 53 n.2 (1st Cir. 2013) (Rule 17(c) "contemplates subpoenas duces tecum returnable either at or prior to trial"); Fed. R. Crim. P. 17(c). One of the "fundamental characteristics of the subpoena duces tecum in criminal cases" is that "it was not intended to provide a means of discovery for criminal cases." United States v. Nixon, 418 U.S. 693, 698 (1974); accord United States v. Henry, 482 F.3d 27, 30 (1st Cir. 2007). A Rule 17(c) subpoena duces tecum applicant must show, inter alia, that "the application is made in good faith and is not intended as a general 'fishing expedition.'" United States v. Nixon, 418 U.S. at 700.

Here, North Texas and Reeder filed motions to quash on the basis that the subpoenas were unreasonable and oppressive. Under Rule 17(c), a court may quash a subpoena duces tecum "if compliance would be unreasonable or oppressive." Fed. R. Crim.

P.  The Supreme Court in Nixon "elucidated the meaning of this standard" by "holding that a subpoena duces tecum is not 'unreasonable or oppressive' if the proponent establishes relevancy, admissibility, and specificity."  Stern v. United States Dist. Ct. for Dist. of Mass., 214 F.3d 4, 17 (1st Cir. 2000) (citing United States v. Nixon, 418 U.S. at 700).  Thus, defendant, as the party seeking production, has the burden to "clear three hurdles:  (1) relevancy; (2) admissibility; (3) specificity."[2]  United States v. Nixon, 418 U.S. at 700.

The subpoenas do not seek specific documents or even a specific, discrete set of documents.  Rather, the subpoenas request at least seven broad categories of documents pertaining to two individuals and two entities over an extensive time period.  The subpoenas therefore fail the specificity hurdle, invariably will include matters that are not admissible, and

---

[2] The Nixon Court did "not decide whether a lower standard" applies to applies to 17(c) subpoenas issued to third parties as opposed to the government.  United States v. Nixon, 418 U.S. at 700 n.12.  This court declines to adopt a lower standard.  See United States v. Rand, 835 F.3d 451, 463 (4th Cir. 2016) (declining "to adopt a lower standard for third-party subpoenas"); United States v. Fields, 663 F.2d 880 (9th Cir.1981) (no basis to use "lesser evidentiary standard merely because production is sought from a third party rather than from the United States"); United States v. Fernandes, 115 F. Supp. 3d 375, 378 n.2 (W.D.N.Y. 2015) ("'Court is unaware of any other decision applying a test less restrictive than the Nixon test to a Rule 17(c) subpoena issued to a third party'") (quoting United States v. Rajaratnam, 753 F. Supp. 2d 317, 320 n.1 (S.D.N.Y. 2011), in parenthetical); United States v. Libby, 432 F. Supp. 2d 26, 31 (D.D.C. 2006).

amount to "a general discovery device." United States v. Henry, 482 F.3d at 30; see, e.g., United States v. Rand, 835 F.3d 451, 463 (4th Cir.), cert. denied, 137 S. Ct. 525 (2016) (affirming court's quashing Rule 17(c) subpoena to third party "to produce 'accounting entries, budgets, budget entries, and financial reports for seven categories of reserve accounts over an eight-year period--the timeframe of the alleged conspiracy'"). The breadth of the subpoenas likewise establishes that defendant intended the subpoenas to operate as a general fishing expedition. See United States v. Nixon, 418 U.S. at 700.

Defendant nevertheless points out, correctly, that this court approved the subpoenas based on the ex parte application. In signing the application, however, the Deputy Clerk left the schedule blank for defendant to complete. Consequently, this court did not review the actual, expansive language in the schedules pertaining to the two individuals and two entities for the time frame of 2008 to 2014. Moreover, Rule 17(c) expressly provides a "check on the judicial issuance of a pre-trial subpoena duces tecum--a motion to quash or modify by the subpoenaed party." U.S. v. Beckford, 964 F.Supp. 1010, 1028 (E.D. Va. 1997) (examining similar, albeit prior, version of Rule 17(c)); see 2 Charles Alan Wright et al., Federal Practice and Procedure Criminal § 274 n.9 (4th ed.) (recognizing practice of issuing subpoena duces tecum in blank and that "'[p]rotection

6

against abuse is often assumed adequately provided by the opportunity for motions to quash or to limit, which can be made before compliance is due'"). "Where," as here, "the subpoenaed party brings a motion to quash or modify, the court *must reconsider the <u>Nixon</u> standard* in determining whether 'compliance with the subpoena would be unreasonable or oppressive.'" Id. (quoting Rule 17(c) and citing <u>Bowman Dairy Co. v. United States</u>, 341 U.S. 214, 220 (1951)) (emphasis added). Having reexamined the <u>Nixon</u> standard with the benefit of North Texas' and Reeder's briefs, this court is convinced, as it was with respect to the Brunos' subpoenas, that the North Texas and Reeder subpoenas constitute a fishing expedition and fail to satisfy all of the <u>Nixon</u> requirements.

Defendant also seeks production based on a violation of his constitutional right to a fair trial and to present a complete defense and access evidence. (Docket Entry # 116). Defendant maintains that the material is "integral to understanding the facts of the criminal charges" and "not motivated by a mere hope of finding potentially exculpatory evidence." (Docket Entry # 116, pp. 2, 9). It is well settled that defendant has a constitutional right to "be afforded a meaningful opportunity to present a complete defense." <u>California v. Trombetta</u>, 467 U.S. 479, 485 (1984). "To safeguard that right, the Court has developed 'what might loosely be called the area of

7

constitutionally guaranteed access to evidence.'"  Id. (quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982)). "[T]his group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system."[3]  Id.

Rule 17(c), however, "implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor."  In re Martin Marietta Corp., 856 F.2d 619, 621 (4th Cir. 1988) (citing California v. Trombetta, 467 U.S. at 485); United States v. Beckford, 964 F. Supp. 1010, 1019 (E.D. Va. 1997)); 25 James Wm. Moore et al., Moore's Federal Practice § 617.02[1] (3rd ed.) ("Rule 17(c) implements" Sixth Amendment guarantee to compulsory process which "is considered fundamental to the guarantee of due process and a fair trial"). "Enforcement of a Rule 17(c) subpoena is governed by the standards" in Nixon, which require a showing of "(1) relevancy,

---

[3] Because defendant is seeking information in the hands of a third party, as opposed to in the possession, custody, or control of the government or requested by the government, the government has no obligation to provide the material. See United States v. O'Brien, Crim. No. 12-40026-FDS, 2013 WL 1057929, at *5 (D. Mass. Mar. 13, 2013) ("information maintained by those [third party] entities are beyond the possession, custody, and control of the government, except to the extent the government already has requested and received specific information from them") (collecting cases); United States v. Tomasetta, No. 10 CR 1205 (PAC), 2012 WL 896152, at *4-5 (S.D.N.Y. Mar. 16, 2012); United States v. Rivera-Rodriguez, 617 F.3d 581, 595 (1st Cir. 2010); United States v. Josleyn, 206 F.3d 144, 153-54 (1st Cir.2000).

(2) admissibility, and (3) specificity with respect to the documents." In re Martin Marietta Corp., 856 F.2d at 621. As explained by one court, "'The right to defend oneself does not extend to using the power of the Court to compel third parties to provide information that may not even be admissible at trial or at a hearing or that is merely "investigatory."'" United States v. Rand, 835 F.3d at 463 (quoting United States v. Al-Amin, No. 1:12-CR-50, 2013 WL 3865079, at *8 (E.D. Tenn. July 25, 2013)). As presently framed, the subpoenas seek a vast array of material that is not admissible. In the alternative, even balancing the relevant concerns, including defendant's right to present a defense and access evidence as well as the burden imposed on North Texas and Reeder by the breadth of the subpoenas, the constitutional claim does not warrant or compel requiring North Texas and Reeder to undertake production.

Turning to LR. 7.1(a)(2) and assuming the existence of a violation, it does not warrant the sanction of denying the motions where, as here, the parties engaged in a series of discussions. See Gerakaris v. Champagne, 913 F. Supp. 646, 651 (D. Mass. 1996) ("while a litigant's failure to observe the Local Rules invites sanctions, omitting to confer prior to filing a motion certain to be opposed does not warrant so severe a sanction as summary denial"); accord Laporte v. Laboratory Corp. of Am. Holdings, Civil Action No. 13-12084-FDS, 2014 WL 2818591,

9

at *7 (D. Mass. June 20, 2014) (a denial of motion based on lack of certification inappropriate and court has great leeway in enforcing local rules).

As a final matter, North Texas and Reeder assert there is no authority to issue the subpoenas on an ex parte basis. Hence, they contend that the subpoenas "should be quashed and/or unsealed." (Docket Entry ## 107, 110). Allowing the former remedy to quash the subpoenas reduces the need, if any, to allow the alternative remedy to unseal the application. Further, in light of the language in United States v. Kravetz, 706 F.3d 47, 53 n.4 (1st Cir. 2013) ("text of Rule 17(c) does not expressly prohibit ex parte request for subpoenas, and courts have found them to be permissible") (dicta), the request is denied.

## CONCLUSION

In accordance with the foregoing discussion, the motions to quash (Docket Entry ## 106, 109) are **ALLOWED** to the extent that the two subpoenas duces tecum at issue are quashed.

                                       /s/ Marianne B. Bowler
                                       **MARIANNE B. BOWLER**
                                         United States Magistrate Judge